UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 16-23939- CIV-GOODMAN
[CONSENT CASE]

DAWN DAWSEY,

    Plaintiff,

v.

CARNIVAL CORPORATION, et al.,

    Defendants.
_____/

### OMNIBUS ORDER ON MOTIONS *IN LIMINE* AND *DAUBERT* MOTION

The parties in this cruise-oriented, personal-injury lawsuit have filed pretrial motions designed to exclude the other side's expert-witness testimony or to keep the jury from hearing certain evidence. The Court will address these motions before ruling on two summary-judgment motions (one filed by Defendant Steiner Transocean Ltd., which operated a spa aboard the Carnival ship *Elation*, and one filed by Defendant Carnival Corporation). The rulings here are a mixed bag, so it is difficult to provide an overall, succinct summary. Suffice it to say, the Court **grants** some of the motions and **denies** some of the motions.

I.    **Factual Background**

Plaintiff Dawn Dawsey contends that she fractured her hip during a bamboo

massage on Carnival's *Elation*. She claims that Steiner's masseuse broke her hip during the massage due to excessive force with the bamboo. She also alleges that the injuries required surgery and extensive treatment and rehabilitation. And she also contends that Carnival was negligent in failing to properly investigate the qualifications and experience of masseuses hired by Steiner and in failing to train Steiner in the proper massage methods.

Defendants deny those charges. They say that Dawsey suffered from preexisting back pain, lied about her preexisting conditions, and failed to complain to Steiner or Carnival during or immediately after the massage. They also contend that the massage did not cause Dawsey's hip injury.

Defendants filed a motion *in limine* to exclude the expert causation opinions of Dawsey's treating physicians. [ECF No. 49]. Dawsey filed a response [ECF No. 58], but Defendants did not file a reply (and the time to do so has expired). Dawsey filed her own motion *in limine* concerning five topics. [ECF No. 50]. Defendants filed a joint response, and Dawsey filed a reply. [ECF Nos. 57; 61]. Also, Dawsey filed a motion to exclude Dr. Mitchell Whiteman, a defense-retained diagnostic radiologist. [ECF No. 51]. Defendants filed a joint response, and Dawsey filed a reply. [ECF Nos. 56; 60]. Finally, Defendants jointly filed a motion to exclude Dr. Troiano's expert testimony. [ECF No. 52]. Dawsey filed a response, and Defendants filed a joint reply. [ECF Nos. 82–83].

## II. Applicable Legal Standards

The district court has "broad discretion in determining whether to admit or exclude expert testimony, and its decision will be disturbed on appeal only if it is manifestly erroneous." *Evans v. Mathis Funeral Home*, 996 F.2d 266, 268 (11th Cir. 1993). Federal Rule of Evidence 702 governs the admission of expert testimony, as explained and refined by the United States Supreme Court in *Daubert* and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999).

> Rule 702 provides that:
>
> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

To fulfill its obligation under *Daubert*, a trial court engages in a three-part inquiry: (1) whether the expert is qualified to testify competently; (2) whether the methodology used to reach the conclusions is sufficiently reliable; and (3) whether the testimony assists the trier of fact to understand the evidence or to determine a fact at issue. *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291-92 (11th Cir. 2005).

Reliability of the methodology requires "an exacting analysis of the proffered

3

expert's methodology." *McCorvey*, 298 F.3d at 1257. That analysis takes into consideration a number of factors, including: (1) whether the expert's methodology can be, and has been, tested; (2) whether the expert's scientific technique has been subjected to peer review and publication; (3) whether the method employed has a known rate of error; and (4) whether the technique is generally accepted in the scientific community. *Rink*, 400 F.3d at 1292; *Quiet Tech. DC–8, Inc. v. Hurel–Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003).

These reliability factors, however, are non-exhaustive. *Kumho Tire*, 526 U.S. at 150; *Rink*, 400 F.3d at 1292. Thus, "[i]n evaluating the reliability of an expert's method . . . a district court may properly consider whether the expert's methodology has been contrived to reach a particular result." *Rink*, 400 F.3d at 1293 n.7. The burden of establishing the reliability of an expert's opinions rests on the proponent of that expert's testimony. *U.S. v. Frazier*, 387 F.3d 1244, 1244 (11th Cir. 2004). The party proffering the expert also has the burden of "laying the proper foundation for the admission of the expert testimony . . . and admissibility must be shown by a preponderance of the evidence." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999).

"It is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech. DC–8, Inc.*, 326 F.3d at 1341. Thus, the district court cannot exclude an expert because it believes the expert lacks personal credibility. *Rink,* 400 F.3d at 1293 n.7. To the contrary, "vigorous cross-examination,

4

presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Quiet Tech. DC–8, Inc.*, 326 F.3d at 1341 (quoting *Daubert*, 509 U.S. at 596).

A less-than-perfect expert opinion may still be admitted, even if it contains gaps. *See In re Trasylol Prods. Liab. Litig.*, No. 08–MD–01928, 2010 WL 1489793, at *6 (S.D. Fla. Feb. 24, 2010) ("Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded."). Furthermore, courts "must be careful not to conflate questions of admissibility of expert testimony with the weight appropriately to be accorded to such testimony by the fact finder." *In re Trasylol Products Liab. Lit.*, 2010 WL 1489793 at *7 (quoting *Quiet Tech*, 326 F.3d at 1341).

### III. Analysis

#### A. *Defendants' Motion to Exclude Causation Testimony [ECF No. 49]*

Defendants want to exclude the expert causation-opinion testimony of Dawsey's treating physicians on the ground that Dawsey did not provide written reports from those physicians in accordance with Federal Rule of Civil Procedure 26(a)(2)(B). [ECF No. 49]. For all treating doctors other than Dr. R. Williams Junius, Dawsey agrees that she will not solicit causation opinions. [ECF No. 58, p. 2]. So, given that express representation, the Defendants' motion *in limine* is **denied as moot** as to the treating doctors other than Dr. Junius.

For Dr. Junius, Dawsey advises that District Judge Federico A. Moreno (the first

judge to preside over this case) already allowed her to file an expert report by May 31, 2017. [ECF No. 54]. Dawsey represents in her May 10, 2017 response that she "will file an expert report from Dr. Junius." [ECF No. 58, p. 2].

The record does not reflect whether Dawsey served the report, and my review of the docket sheet does not reveal whether she *filed* the report. On the other hand, Defendants do not contend that Dawsey failed to follow through on her commitment to provide Dr. Junius's report. Therefore, I assume the report was *served*, and I also assume that Defendants are not objecting if the report was not actually filed but was merely served. If my assumption is incorrect and Defendants did not receive Dr. Junius's expert report by the Court-ordered deadline of May 31, 2017, then Defendants may re-file the motion *in limine*.

For now, however, the Court **denies** the motion as to Dr. Junius.

B.     *Dawsey's Motion in Limine [ECF No. 50]*

Dawsey seeks relief on five separate challenges: (1) preventing Defendants from mentioning that Steiner is the "industry leader" in providing spa services; (2) precluding the defense doctors from testifying about causation; (3) prohibiting Defendants from arguing that Dawsey is a fraud; (3) excluding evidence of Dawsey's marijuana, opioid, and alcohol use; and (4) barring evidence of collateral-source payments or benefits. My rulings are outlined below:

1.     *Denied* **as to Steiner being an "industry leader" in spa services**. Dawsey

contends that Carnival negligently retained Steiner and failed to engage in adequate due diligence about Steiner. Given these allegations, Steiner's reputation is relevant. Dawsey is free to cross-examine Carnival's witnesses about what other steps the cruise-ship operator took besides relying on Steiner's reputation before deciding to use it as an independent contractor to provide onboard spa services.

2. ***Denied* as to Defendants' experts' causation opinions**. The defense experts need not pinpoint the specific cause of the injury. They're permitted to opine about inconsistencies in *Dawsey's* theory or the causation theory of her experts. Dawsey may challenge those defense expert opinions on cross-examination.

3. ***Granted* as to labeling Dawsey "a fraud."** Defendants, however, are permitted to cross-examine and argue about inconsistencies and/or omissions in Dawsey's testimony about her prior medical record. If supported by record evidence, then Defendants are also permitted to challenge Dawsey's credibility and to argue that the medical records do not support her testimony and that her testimony is dramatically different than the medical scenario reflected in her medical records. They can even argue that her testimony is entitled to no credibility whatsoever. But what they cannot do is to use the inflammatory word "fraud" or to call her a "fraudster."

4. ***Granted* as to Dawsey's prior, occasional use of marijuana, opioids, and alcohol**. Defendants' theory concerning Dawsey's prior marijuana and opioid use and alcohol consumption, which is *not* that these substances caused her hip injury, is

7

speculative. And, even if the theory was not overly speculative, evidence of drug and alcohol use in this case does not survive a Federal Rule of Evidence 403 balancing analysis.

On the other hand, if Defendants have evidence that Dawsey was using any of these drugs or substances on the cruise or shortly before the cruise (so that she could still be affected by those substances when she was aboard the vessel), then that evidence is admissible. Based on my review of the record evidence, however, it does not appear that Defendants have this type of evidence.

5. *Granted* **as to collateral-source evidence**. Dawsey assures the Court that she will not inject her financial condition into the trial. Therefore, evidence of collateral-source payments is inadmissible unless Dawsey opens the door. This ruling does not preclude Defendants from filing post-trial motions to reduce a verdict should Dawsey prevail at trial.

C. *Dawsey's Motion to Exclude Dr. Whiteman [ECF No. 51]*

Dawsey seeks to exclude the expert-opinion testimony of Dr. Whiteman, a defense-retained diagnostic radiologist, on several grounds. First, she argues that he is not adequately qualified because he is not a surgeon and does not treat patients with hip fractures (other than to read their films). Second, she argues that this doctor must have ignored the portions of her deposition that undermine the opinions in his report. Third, she contends that he did not consider the force applied in performing the alleged

technique (i.e., the masseuse placed a hand under the bamboo stick and against the hip and extended the stick outward to stretch the outer side muscles and hip joints). Finally, she argues that his opinion on causation is improper and unreliable because he said: "I do not know the cause of Ms. Dawsey's left hip fracture, but it definitely was <u>not</u> caused by the massage." [ECF No. 51-1, p. 30].

Defendants, of course, take issue with all those challenges. They say that Dr. Whiteman is qualified and that his methodology is reliable. They stridently challenge the notion that he "cherry-picked" facts, and they accuse Dawsey's counsel of making misrepresentations by including a quote that omitted the prior page of deposition testimony. And they argue that Dawsey is improperly seeking to shift the burden of proof on causation to Defendants. Specifically, they say that "Dr. Whiteman is not attempting to definitively prove that something else caused Plaintiff's hip fracture, nor is he required to; instead, he considered all of the relevant evidence and offered testimony tending to diminish Plaintiff's allegations that the bamboo massage was the cause of her hip fracture." [ECF No. 56, p. 7].

The Court **denies** the motion. The Court agrees with Defendants that Dr. Whiteman is sufficiently qualified to give his opinions. Dawsey, however, is free to vigorously cross-examine Dr. Whiteman at trial in an effort to uncover purported deficiencies in his training.

In addition, Dawsey bears the burden of proving causation; the burden does not

fall on Defendants to *disprove* causation. *Aycock v. R.J. Reynolds Tobacco Co.*, 769 F.3d 1063, 1070 (11th Cir. 2014) (reversing a plaintiff's judgment where the district court improperly shifted the burden of proof as to causation on the wrong party by requiring the defendant tobacco company to prove that something other than smoking caused the decedent's death).

Accordingly, Defendants' expert is allowed to provide testimony that casts doubt on Dawsey's causation theory without also definitively opining on what caused the injury. *See Companhia Energetica Potiguar v. Caterpillar Inc.*, No. 14-CV-24277, 2016 WL 7507848, at *13 (S.D. Fla. Aug. 1, 2016) ("[W]here defendant seeks to introduce evidence merely to cast doubt on the plaintiff's theory of causation, the expert need not definitively rule out plaintiff's theory for his testimony to be admitted"); *see also Lebron v. Royal Caribbean Cruises, Ltd.*, No. 16-24687-CIV, 2018 WL 3583002, at *4 (S.D. Fla. July 26, 2018) (refusing to strike cruise ship's rebuttal causation expert's testimony, explaining that "opining on alternative theories" for the plaintiff's injuries does not warrant exclusion); *Wicker ex rel. Wicker v. Ford Motor Co.*, 393 F. Supp. 2d 1229, 1237–38 (W.D. Okla. 2005) ("Plaintiff argues that defendants' expert witness was unable to determine the cause of the fire with certainty; however, it is *not defendants' burden to disprove plaintiff's theory*, but only to show that there is an absence of proof to support plaintiff's claim.") (emphasis added). But again, Dawsey is free to vigorously cross-examine Dr. Whiteman at trial in an effort to uncover purported deficiencies in his

methodology.

### D. *Defendants' Motion to Exclude Dr. Troiano's Opinions [ECF No. 52]*

Defendants seek to exclude the expert-opinion testimony of Dr. Christopher Troiano, an orthopedic surgeon who reviewed Dawsey's post-cruise medical records and concluded that the massage caused her hip injury. Defendants do not challenge Dr. Troiano's *credentials*, as he is board certified in orthopedic surgery, has published in the field, and has been on the board of governors of a South Florida hospital. Instead, they challenge his methodology (or to be more accurate, his lack of methodology).

Boiled down to its basics, the motion focuses on the following challenges: (1) Dr. Troiano reviewed only medical records; (2) Dawsey's counsel selectively chose those records, the earliest of which was from nearly a week after the cruise; (3) Dr. Troiano did not examine Dawsey, never spoke to her, and did not review her pre-cruise records or deposition testimony; (4) Dr. Troiano relied on anecdotal, self-reported statements that Dawsey gave to her treating physicians; (5) Dr. Troiano did not rule out other possible causes of Dawsey's hip fracture; and (6) Dr. Troiano improperly concludes that just because the post-cruise medical records reveal no other traumatic event, the only logical cause of the hip fracture was the bamboo massage.

Given these circumstances, Defendants contend that Dr. Troiano's methodology fails to meet the *Daubert* factors and the other tests the courts use when assessing the admissibility of expert-opinion testimony. Moreover, they say his opinion testimony

would not be helpful to the jury in a meaningful way.

In response to this substantial challenge, Dawsey spends most of her memorandum reciting the applicable law and stressing Dr. Troiano's training and background, which, as noted, Defendants are not attacking. She then cites a few cases that she says stand for the proposition that "a physician need not necessarily examine a patient, interview that patient or speak with the patient's treating physicians in order to render opinions regarding diagnosis, prognosis, course of treatment and even causation." [ECF No. 82, p. 5]. Plaintiff contends that Dr. Troiano's opinions are admissible under *Daubert* because they are "based upon his 25 years as a Board-Certified Orthopedic Surgeon and his extensive review of the medical records of the Plaintiff after her injury." [ECF No. 82, p. 6].

In their reply, Defendants concede that a doctor "may primarily base his opinion as to the cause of a plaintiff's injuries on his history where the plaintiff has sustained a common injury in a way that it commonly occurs[.]" [ECF No. 83, p. 2 (internal quotations omitted)]. But Defendants say the hip fracture at issue here is "simply not the type of injury which commonly occurs from a massage." *Id.* Therefore, they argue, this case is not one where medical records (especially incomplete ones) can form the basis for a reliable causation opinion.

There is little doubt that Dr. Troiano's causation opinion is subject to *substantial* challenge. Reviewing only medical records selected by the plaintiff's attorney is

problematic, to say the least, especially when the expert does not also review the plaintiff's medical records from before the cruise or review her deposition testimony.

So the Court could likely grant the motion and exclude Dr. Troiano's testimony without getting reversed because of the considerable discretion afforded to the "gatekeepers" who assess the admissibility of expert-opinion testimony. On the other hand, a decision denying the motion *in limine* would also likely be affirmed. *See, e.g., Am. Family Mut. Ins. Co. v. Roth*, No. 05 C 3839, 2010 WL 3397362, at *2 (N.D. Ill. Aug. 25, 2010) (noting that discretion "denotes the absence of a hard and fast rule" and explaining that "on virtually identical facts, two decision makers can arrive at opposite conclusions, both of which constitute appropriate exercises of discretion").

But for now, the Court **denies**, albeit **without prejudice**, Defendants' motion *in limine* to exclude Dr. Troiano's causation opinion. *See Geyer v. NCL (Bahamas) Ltd.*, 203 F. Supp. 3d 1212, 1216–17 (S.D. Fla. 2016) (denying motion to exclude testimony of passenger's medical expert in lawsuit against cruise-ship operator because the opinion was reliable even though the doctor relied solely on passenger's post-incident medical records). Defendants will have a full opportunity to cross-examine Dr. Troiano at trial, and it may well be that the jury finds his opinion on causation entitled to no weight whatsoever based on the factors described above.

That being said, the Court's ruling is not final, and I may well revisit the admissibility issue at trial, either in a motion to exclude or in a motion for judgment as a

matter of law. Dr. Troiano's opinion testimony on causation is far from strong and barely squeaked by the pre-trial motion to exclude it. Dawsey may not necessarily obtain the same favorable ruling at trial. A final determination will await the doctor's in-court testimony and my evaluation of his credibility, which will be based on, among other factors, whether his in-court explanation of his methodology is persuasive enough to justify admissibility.

    **DONE and ORDERED** in Chambers, at Miami, Florida, on October 5, 2018.

_____
Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
All counsel of record